The first case is Southern Furniture Leasing v. YRC 19-3262. Mr. Barton, you may proceed. Thank you, Your Honor. May it please the Court, Southern Furniture Leasing, Inc. appeals from a Rule 12b6 dismissal of its individual imputative class complaint against defendant YRC, Inc. and related entities. Bless you. Southern Furniture is a customer of YRC, a motor carrier, and under YRC's normal contracts with its customers called bills of lading, a key factor in determining YRC's charges and what a customer pays for a given shipment is the actual weight of the shipment. The higher the weight, the higher the bill from YRC to the customer. Typically, a shipment would be given an initial weight at or near its point of origin, and that weight is recorded on a bill of lading for that shipment. Then, commonly before delivery to the destination, YRC would reweight the shipment and enter that weight into its system for that bill of lading. This was normal industry practice and YRC practice. And until 2006, YRC and its customers had to adjust the weight of their bills of lading and corresponding charges up or down depending on the results of the reweigh in order to meet YRC's contractual obligation to charge based on the actual weight of the shipment. That was also industry practice. But starting in 2006, our complaint alleges that YRC secretly reprogrammed its computerized billing system so that it would only adjust customers' charges upward in YRC's favor when a reweigh was entered that was positive or greater than the original weight. But when a reweigh was lighter than the original weight, called a negative reweigh, the system automatically rejected and hid that reweigh. So there would be no downward adjustment to the weight or the price in favor of the customer. YRC did not disclose that it had changed its system or its practice, did not tell customers when they had a negative reweigh that they did not get credit for. The bills of lading for shipments with negative reweighs did not reveal the negative reweigh or contain any downward price adjustment. And YRC's own internal estimates were that this hidden scheme may have netted it between 10 and 20 million dollars per year alone by not giving those price reductions. The scheme was investigated under seal by the federal government after a whistleblower complaint, finally revealed when the government's complaint was unsealed in December of 2018, and Southern Furniture filed this case in March of 2019 on behalf of itself and a putative class of YRC customers adversely affected by this deceptive scheme. The district court dismissed the complaint, relying on a federal statute, 49 USC 13710A3B, holding that because Southern Furniture did not contest the alleged inflated bills within 180 days of receipt of those bills, it lost any and all rights to contest those bills in a lawsuit, including this one. We contend respectfully that the district court committed reversible error in interpreting and applying the 180 day rule in 13710A3B to dismiss Southern Furniture's complaint. In doing so, the district court reached a sweeping conclusion about the 180 day rule that under its reasoning, motor carriers like YRC are essentially shielded or immunized from any liability or for even fraudulent and deceptive billing practices so long as they're able to conceal their fraud from their customers for at least 180 days. This was not and could not have been what Congress intended with the 180 day rule. Okay, cancel, cancel. Before you get into the merits, I'm wondering if you could address the standing issue here. Do you allege that you actually experienced a negative re-weight and your bill was not reduced accordingly? We allege that we believe that we did, Your Honor, and how would we know? Okay, but let me just... Okay, sure. Have you alleged that in the complaint? You believe you have, but have you alleged that you experienced a negative re-weight, but your bill was not adjusted? Yes, Your Honor. We have alleged that in the complaint, and as the district court found, our allegations did allege a sufficient concrete injury under Spokio for standing. Yes, Your Honor. Well, could you just read me the allegation that you're relying upon from your complaint? Sure, Your Honor. The allegations are those relied on by the district court. I believe that in our breach of contract claim, we said that we have been adversely affected by the scheme at issue in the negative re-weight. And I'm sorry, I'm just going to flip to it to try to cite the right paragraph. Okay. Plaintiff and each member of the class have been directly and proximately harmed by YRC's breach of contract in that each paid more than was owed under the contract. So you do not allege that you had a negative re-weight, but the bill was not adjusted? That's, I disagree, Your Honor. I think we allege that we have been directly harmed by this scheme. And the scheme was for negative re-weights. Yes, Your Honor. Okay. And you're saying that's sufficient? Yes, Your Honor. Okay. And let me make two points quickly before I move on to the statutory interpretation. And that is, one, we believe that we have had negative re-weights that we were not credited for. We have a plausible basis to believe that based upon the scheme that is alleged. We do not know because the bills that we get do not contain that information. So we have to get that information. We do not believe that we have been adversely harmed for YRC, but we believe we've been adversely affected, affected plausibly, and I think we've alleged that. But two, even if we have not, and even for customers that may not have had a negative re-weight, we would allege they have also been harmed because YRC did not disclose that it had changed its practice to customers. Customers deprived of that information lacked the opportunity to renegotiate rates or to choose a different carrier because of the secret scheme. And so we believe everyone was harmed, whether they were harmed directly by the negative re-weights not credited or indirectly by the lack of information. Thank you. Counsel, just to be clear though, the complaint does not allege that you were overcharged on any particular shipment, correct? Yes, your honor. That's correct. So we believe that the district court committed reversible error interpreting and applying the 180-day rule to dismiss the complaint. And we agree with our co-counsel's statement that in requesting oral argument, that this case presents a matter of first impression for this court on the interpretation of that federal statute. So it is an important case, and of course all cases are important, but this one has implications beyond just the parties here. So we want to reach the right result for the right reasons. Mr. Barton, Mr. Barton, is it your honor? We believe that it is not plain and unambiguous when read in isolation as the district court did here. We believe that it is appropriate just from, I say from the words itself, it must be reviewed in its context and the court must employ ordinary rules of interpretation beyond just reading the plain words of the second sentence of A3B as the district court did here. Well, no, I understand that. But when you read the provision in context, does it have a plain meaning then? Well, yeah, I think so, your honor. Here, I'm going to answer that by saying no, because I think the court could reach two or more reasonable interpretations of it, and I'm going to argue for two different alternative interpretations that this court could reach, both of which I believe would be reasonable ways to interpret the statute. Therefore, I think I have to agree that the statute by itself is subject to more than one reasonable interpretation. All right. Before you get into those alternative interpretations, given what you just said, why shouldn't we accord at least some persuasive value to the way that the Surface Transportation Board has interpreted the statute? Well, your honor, I think it's because the Surface Transportation Board has not interpreted the statute in any way that is connected to the allegations or the situation presented in this case. There is no interpretation by the board to which this court should defer, because those cases cited, those board decisions cited, did not address in any way a situation where there was a claim of fraud or deception by a motor carrier that would prevent a shipper from even knowing that it had a potential dispute with a bill. Is there anything in the statute that distinguishes between claims that involve fraud and claims that don't? The language of the statute, your honor, we believe when properly read makes that distinction by omission. And let me explain. So there are two ways to interpret the statute, we believe. One is the narrowest interpretation of the scope and that applies only to board proceedings. And that would be reading B3 in its entirety as dealing with just ordinary billing disputes that come before the board. It would be reading the second sentence in connection with all of subsection, I said B3, I meant 3B. And so we believe the language there suggests that it was intended only to apply to those disputes brought before the board. And the language that you're relying on is the the first sentence because it refers to that the shipper may request that the board... Thank you. And it's the connection between the second sentence and the first, all dealing with charges billed that could be brought before the board. And the second argument, that's the narrower argument, the argument that we believe the court may prefer to choose here is without having to decide whether it applies, which legal actions, court actions it may apply to, the court could decide that the language definitely does not reach allegations like those in our complaint dealing with fraud or deception. To answer your question, your honor, let me go to that kind of statutory textual interpretation. When you read the B3B in its entirety, it says if a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges. In this case, the allegations we are making present claims that arise not from charges that are originally billed. The absence of any adjustments to an original bill. This provision is intended to address the ordinary billing disputes in shipping situations where both parties have enough information from the face of the bill to know whether they have a dispute. And that's apparent from the language used here. It is addressing disputes that are on the original bill or subsequent bill. Again, our allegations in this case go to a situation, importantly, caused by deception that address the absence of price adjustments to a bill of which shippers have no way to know. And we believe properly reading this and none of the cases cited and relied upon by the district court or by the defendant address any situation involving allegations of fraud. The only case that does so far is the CMS wholesale grocers case that found that the 180-day rule wouldn't apply. In that case, it was the relator who they said that 180 days didn't apply to. Right. Your Honor, I believe you're referring to a Second Circuit case that is the United States versus or Grubb versus DHL Express, which is a Second Circuit case that found it did not apply to a relator in a false claims act. Also, which inferentially would support the reversal of the district court here. And, Your Honors, thank you for your time. I realize I am out. We respectfully request that you reverse the district court remand for further proceedings. Thank you. Thank you, counsel. Mr. Hill? Mr. Hill, you need to unmute. Thank you, Judge. If it pleases the court, in addition to the question of the statute expressing congressional intent that shippers must give notice of their intent to contest the carrier's bill, congressional intent to address a carrier and shippers delayed contesting of billing was specifically the purpose of legislation first enacted in the Transportation Industry Regulatory Act of 1994 and the Interstate Commerce Termination Act of 1995. Judge Vratil's treatment of 49 U.S.C. 13710 A.3.B. as a statute of repose is consistent with this intent and its language therein and should be, therefore, affirmed by this court. Appellees will focus their arguments this morning on the following. First, as this statute is unambiguous, a shipper does not have the right to contest a shipping bill whether in court or in front of the board. The statute does not specify or limit unless it does so within 180 days. Therefore, the district court's decision dismissing the appellant's complaint should be affirmed. Second, although the court is not bound by STP, STB, or surface transportation decisions that are unanimous in supporting the 180-day requirement as a precondition for contesting appellee's freight charges, they are nonetheless, we would say respectfully, something that this court could consider as they, like this court, can use plain language approaches to support their views and they demonstrate the practical importance of the 180-day rule. Third, congressional intent behind the 180-day rule as a precondition is evidenced by its overall scheme to address the transportation industry. It's not necessary to get into that overall attempt to address the transportation industry, but in the event that the court is trying to interpret this statute and adding context, we believe that the context that is relevant and that this court should consider was that Congress, as it was deregulating the industry, still wanted to have some portions of the transportation industry that they did regulate, specifically the 180-day rule. Why? Because at the time of the enactment, there was a crisis that was present that was referred to as the undercharge crisis, where some years after the bill had been approved, the carrier would show up and all of a sudden bring new and additional charges. Congress looked at that and said, the reason for having this 180-day rule is to prevent that. And they did not limit, the statute does not limit the circumstances under which it would apply. In other words, there is not a carve-out exception within the language of the statute that says in the event of fraud or the allegation of fraud that the 180-day rule does not apply. Mr. Hill, could we back up to your first point about how you're reading the statute, and could you address why Southern Furniture's scope of the subparts argument about the first and second sentences in A3B, why isn't that persuasive? Sure, Your Honor. Just as a procedural matter, and I will speak directly to the court's question, but just as a procedural matter, I don't want to go too far down the road in responding without noting that that particular argument was waived and not presented to Judge Vratil. And we would make an argument that the Tenth Circuit should not take up that issue at this time because it was waived at the district court level. Do you think that this court is precluded from using all the tools of statutory construction in interpreting a statute? No, Your Honor, and I'd like to go to your question specifically. All right. There are several problems with the subparts argument. The first is that to read it that way is to not actually look at the language that was involved. You look at the first part, the first sentence talks about the permissive approach that a party may take on their own to decide whether or not they're going to bring the matter in front of the board. But then they go to the second part of that, where it's mandatory language that says, regardless of whether or not you're going to initiate this before a board, or as we have otherwise provided in a district court, you do have to preserve your right as a precondition. And we believe that the divided or the subparts argument completely ignores the congressional intent, which was to require the parties to, with 180 days, to say to the other party in the transaction, we have an issue with this. And to read it would presuppose, would take it out of the context that Congress intended in the first place. Judge Matheson, as I indicated, the headlong into the context for which Congress was trying to, what they were trying to do here. What they were trying to do here was to require the parties, not in a distant future, when paperwork may not be present, when there may be an opportunity to correct immediately the issue over the billing, to immediately deal with that. And it's a specific effort to respond to that undercharge crisis that it was dealing with in advance of the passage of TIRA. So the way that we believe that this court can take into consideration the practical challenges associated with applying that interpretation. It's not only practical, it goes against the two laws. But more importantly, this interpretation, this subparts interpretation flies in the face of what Congress was attempting to do. Could you address whether the Second Circuit decision in GRUP versus DHL goes against your argument? Yes, Your Honor. The importance is that the Second Circuit carves out a very narrow exception when the False Claims Act is present. And what the Second Circuit does is it carves out that exception to say that normally we would look for this 180-day requirement to apply. But because we have carved out under the usage of the False Claims Act, and specifically within the narrow confines of that False Claims Act, we are not going to bar the government from proceeding with a False Claims Act under the 180-day rule. We would argue that that narrow basis and that narrow interpretation is not controlling here, is not precedential here. And that had Congress wanted to have that, they would have clearly looked at the False Claims Act and said that the exception that the Second Circuit has carved out is applicable in all of our cases. In other words, Judge Matheson, in the event that they wanted to have a basis for the False Claims Act was in place, Congress could have well said we are carving out an exception to this 180-day rule and specifically done that in any instance where there is an allegation of fraud or deceit. They don't do that. They simply have a very narrow exception that says when the government is proceeding under the False Claims Act, the 180-day rule will not control and instead the statute of limitations applicable to the False Claims Act will be applicable. In addition to the basis for looking at the precedential value of the STP decisions, which we respectfully would suggest this court ought to take into consideration for the following reasons. First of all, it's when there is some ambiguity in the statute. We're not agreeing with that, but if the court believes that there is some ambiguity here in this statute and needs to go beyond the plain language, there is case law that suggests respectfully that the STP or the Surface Transportation Board as an agency that regularly and for some time has dealt with this issue, that any decisions that it has made or any declaratory opinions that it has provided should be considered by the circuit court. We believe that we have identified the unanimous nature of these declaratory opinions by the Surface Transportation Board as consistent with how Judge Frattle dealt with this issue. That is to say that it's a precondition for pursuing a claim. The other thing that in terms of a congressional intent... So, counsel, on that last point, you're not suggesting that the Chevron analysis applies in this situation, are you? No, Your Honor. That's a good question. And if I gave that impression, I wasn't trying to do so. We read the Chevron decision as in the event that we were asking you to affirm a straight decision or directly to you a decision of an agency. We're not making that argument with you today because the Surface Transportation Board has not ruled in this matter. We're simply making the argument that there is case law that suggests that a court, when primarily responsible for administering that, can look to those decisions and can look at how they've interpreted it and take that into consideration. I think that's a little bit different than the Chevron situation. You, in some ways, end up in the same place, which is you give deference under Chevron to the agency's decision. We're not making that argument. We're simply saying the Surface Transportation Board, which is most familiar with the congressional intent of this statute, has unanimously said that it's a precondition to having a claim. Isn't Mr. Barton right that by interpreting the statute the way you're interpreting it, that if you commit fraud and if you commit fraud and then it's sealed in a acquittal complaint, that you're almost always going to be beyond 180 days before that fraud comes to light? Your Honor, with all respect, we don't agree with the argument. If Congress, which was well aware of the possibility that there could be a circumstance where later discovered information suggested that, in fact, there was a basis for the claim, and there is, I don't have it ready here, but I believe that courts have looked at the issue that there may be circumstances after the 180 days, and yet Congress, knowing that, went forward. There is no basis in this statute to say that there is a carve-out for later discovered information. There's no basis for saying that if you, in the statute, that if you allege in fraud or sound in fraud, that, in fact, you are out from under the statute. It says that it is a precondition that if you are going to challenge as a basis for your claim, you're going to challenge the bill that you received, you must do it within 180 days. The final point that I would like to just focus on before I finish is that I think that Congress has had a great deal of time to look at its language and look at the fallout that occurred as a result of the narrow interpretation that STB has in those decisions. It also has had time after the certain decision by a district court in Ohio and the Jimball-Pontiac case, it has had the opportunity, if it so was interested, to create an exception to 137A3B. It could have come back after these declaratory opinions by the STB. It could have come back after these district court decisions and changed its law to provide some kind of exception to later discovered information. It did not. And we would suggest that given the plain language of this, as well as the lack of standing that is necessary for the appellant to plead its case, we would argue that both of those and either of those is sufficient basis for this court to affirm the lower court's decision. Thank you. Thank you. Thank you to both counsel, Mr. Bart and Mr. Hill. We appreciate your arguments. This case will be submitted and counsel are now excused. Thank you again.